UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK R. PHILLIPS,

      Plaintiff,

vs.

NORTHWEST AIRLINES CORPORATION,

      Defendant.

Case No. Julian Abele Cook
Hon. 00-74168

---

| | |
|---|---|
| DAVID LAWRENCE RAVID (P33384)<br>Ravid & Associates<br>24681 Northwestern Hwy.<br>Suite 414<br>Southfield, MI 48075<br>(248) 948-9696 | DAVID R. BAXTER (P31121)<br>DANIEL J. SEYMOUR (P38908)<br>Nagi, Baxter & Seymour, P.C.<br>155 W. Congress, Suite 800<br>Detroit, MI 48226<br>(313) 964-2040 |

---

### DEFENDANT NORTHWEST AIRLINES, INC.'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO F.R.C.P. 56

NOW COMES the Defendant, Northwest Airlines, Inc., (hereinafter "NWA"), by and through its attorneys, NAGI, BAXTER & SEYMOUR, P.C., and for and as its Motion for Summary Judgment pursuant to Rule 56 states the following:

1.    Plaintiff has brought a claim against NWA based on the alleged negligence of a NWA employee.

2.    As alleged by Plaintiff, Plaintiff was in the course and scope of his employment with Signature Flight Services, Inc. (hereinafter "Signature").

3.    Signature is an independent contractor retained by NWA to provide fueling services for a NWA aircraft.

1



4.   On the date and time of the alleged injury, Plaintiff was acting as a "spotter" for a fueling truck driven by a Signature employee, Mia Whitlow.

5.   Plaintiff alleges that while he was spotting the fuel truck Whitlow was backing up from underneath an aircraft that they had just fueled, another vehicle came into the area and Plaintiff alleges he was pinched between the cart that that other vehicle, a tug, was pulling, and the fuel truck that was being backed up by Whitlow.

6.   Defendant NWA had previously brought a motion for summary judgment which this Court ruled on in June, 2001.

7.   In that earlier ruling, this Court concluded that Plaintiff's claims, based on Michigan's Motor Vehicle Code, were not viable and this Court granted summary judgment to NWA on those claims.   The Court also concluded in its Order of June 21, 2001 that: "For the reasons that were set forth on the record...[The Court would] deny Northwest's request for relief as it relates to the Plaintiff's allegations of common law negligence." (See A, This Court's Order of June 21, 2001).

8.   One reason stated on the record for the partial denial was that the case was of relatively recent origin so that Plaintiff should have further opportunity to prove his case; however, discovery in this case closed on March 15, 2002.

9.   Defendant NWA contends that Plaintiff cannot carry his burden of proof that Defendant NWA was negligent.

2

10.   Further, Defendant NWA renews its earlier position that pursuant to Michigan law, Defendant NWA owed Plaintiff no duty and had a right to rely on Plaintiff's employer's responsibility to provide a safe workplace for Plaintiff in the common work site on the ramp area where Plaintiff's injury allegedly occurred.

11.   Finally, Plaintiff's role as a spotter was such that he was the one who was required to be looking out to make sure it was safe and traffic was clear for the fuel truck to back up and his own inability to correctly undertake his job caused the incident. That is, that nothing that NWA did was a proximate or cause in fact of the injury.

12.   Pursuant to Local Rule 7.1, concurrence of counsel for Plaintiff in the relief sought in this motion was requested on March 22, 2002 by way of a telephone call and said concurrence was not given.

Respectfully submitted,

NAGI, BAXTER & SEYMOUR, P.C.

By: *Daniel J. Seymour*

DAVID R. BAXTER (P38908)
DANIEL J. SEYMOUR (P38908)
Attorney for Defendant NWA
155 W. Congress, Suite 300
Detroit, MI 48226
(313) 964-2040

Dated: March _22_, 2002

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK R. PHILLIPS,

       Plaintiff,

vs.

NORTHWEST AIRLINES CORPORATION,

       Defendant.

Case No. Julian Abele Cook
Hon. 00-74168

---

| DAVID LAWRENCE RAVID (P33384) | DAVID R. BAXTER (P31121) |
|---|---|
| Ravid & Associates | DANIEL J. SEYMOUR (P38908) |
| 24681 Northwestern Hwy. | Nagi, Baxter & Seymour, P.C. |
| Suite 414 | 155 W. Congress, Suite 300 |
| Southfield, MI 48075 | Detroit, MI 48226 |
| (248) 948-9696 | (313) 964-2040 |

---

BRIEF IN SUPPORT
DEFENDANT NORTHWEST AIRLINES, INC.'S
MOTION FOR SUMMARY JUDGMENT
PURSUANT TO F.R.C.P. 56

CONCISE STATEMENT OF ISSUES PRESENTED

I    WHETHER THERE IS ANY GENUINE ISSUE
OF MATERIAL FACT THAT PLAINTIFF HAS
ANY EVIDENCE BEYOND SPECULATION OF
NEGLIGENCE OF NWA?

II   WHETHER THERE IS ANY GENUINE ISSUE
OF MATERIAL FACT THAT PLAINTIFF WILL
CARRY HIS BURDEN OF PROVING
PROXIMATE CAUSE OR CAUSE IN FACT?

III  WHETHER THERE IS ANY GENUINE ISSUE
OF MATERIAL FACT THAT DEFENDANT NWA
OWED ANY DUTY TO PLAINTIFF IN THIS
CLAIM OF INJURY AT A COMMON WORK
SITE?

1

## MOST CONTROLLING AUTHORITY

Candelaria v B.C. General Contractors, Inc.
     and Horizon Cablevision, Inc.,
     236 Mich. App. 67, 600 N.W.2d 348 (1999)...............18, 19

Singerman v. Municipal Service Bureau, Inc.,
     455 Mich. 135, Note 6, 565 N.W. 2d 383 (1997)...........15, 16

Skinner v. Square D. Co.,
     445 Mich. 153, 516 N.W. 2d 475 (1994)..................15, 16

Street v J.C. Bradford & Co.,
     886 F. 2d 1472 (6th Cir., 1989)....................11, 13, 14

i

## TABLE OF CONTENTS

Concise Statement of Issues Presented........................1

Most Controlling Authorities...............................i

Table of Contents.........................................ii

Index of Authorities.....................................iii

Statement of Facts.........................................2

Legal Argument............................................11

     Standard of Review................................11

     I     There is no genuine issue of material fact; Plaintiff has no proof but only speculation of breach of duty by NWA........................12

     II    Further, even if Plaintiff could prove breach of duty of NWA, Plaintiff's own actions were the cause in fact of the injury and NWA is not liable..............................15

     III   There is no genuine issue of material fact that NWA did not control the work site nor was this an inherently dangerous activity and therefore the general rule in Michigan prevails and Plaintiff's employer is the one responsible for Plaintiff's safe work place, and there is no liability for NWA...........16

Conclusion................................................20

## INDEX OF AUTHORITIES

### Cases

Anderson v Liberty Lobby, Inc.,
    477 U.S. 242 (1986)................................11, 13, 14

Bosac v Hutchinson,
    422 Mich. 712, 375 N.W.2d 333 (1985).......................17

Celotex Corp. v Catrett,
    477 U.S. 317 (1989)................................11, 13

Mayberry v Endocrinology-Diabetes Associates,
    926 F. Supp. 1315 (M.D. Tenn., 1996).......................12

Samodai v Chrysler Corporation, 1
    78 Mich. App. 252, 443 N.W.2d 391 (1989)..............17, 18

Schultz v. Consumers Power Co.,
    443 Mich. 445, 506 N.W. 2d 175 (1993).....................12

### Court Rules

Fed. R. Civ. P. 56(c)........................................11

Fed. R. Civ. P. 56(f)........................................13

M.C.L. Section 408.1011......................................19

### Attachments

A -  June 21, 2001 Order of the Court
B -  Plaintiff's Deposition Transcript
C -  Plaintiff's Answers and Supplemental Answers to Defendant
     NWA's Interrogatories
D -  Signature Flight Support Safety Procedures
E -  Affidavit of Michael Rachfal
F -  June 19, 2001 Motion Transcript

<u>FACTS</u>

Plaintiff alleges in his Complaint that a tug being operated by a NWA employee caused injury to Plaintiff. (<u>See</u> Plaintiff's Complaint, Paragraph 4). Plaintiff alleges that the tug driver pulled behind Plaintiff while Plaintiff was walking backward, guiding or spotting a fuel truck back. (<u>See</u> Plaintiff's Complaint, Paragraph 9). Plaintiff alleges that the tug driver, in pulling behind Plaintiff, pinned Plaintiff between two vehicles. (<u>See</u> Plaintiff's Complaint, Paragraph 9). That is, Plaintiff, while in the course and scope of his employment with Signature (an independent sub-contractor of NWA), alleges he was injured on the ramp because of the actions of a tug driver working in the same restricted area. Plaintiff alleges the tug driver was a NWA employee.

NWA previously moved for summary judgment and this Court granted that motion in part and denied it in part. (<u>See</u> A, June 21, 2001 Order). The basis for the denial, at least in part, was to allow Plaintiff more time to prove his case. (<u>See</u> E, June 19, 2001 hearing transcript, p 14).

At deposition, Plaintiff stated that the purpose of his role as a guideman or spotter was to direct the Signature fuel truck driver who was backing up the fuel truck. (<u>See</u> B, pp 35, 37). Plaintiff testified that the spotter is there to make sure that nothing is behind the fuel truck and to ensure that it is safe to back the fuel truck up. Plaintiff understood the spotter's role was to make sure no vehicle is behind the fuel truck. The spotter

2

also has to, at all times, be in a position where the fuel truck driver can see the spotter. (See B, p 37).

At the time of the alleged accident, Plaintiff was also acting as the trainer of Mia Whitlow, the person who was driving, backing up the fuel truck. (See B, p 38). Plaintiff states that Signature trains its employees not to back up away from an airplane unless they are under the direction of a spotter. (See B, p 49). The fuel truck is supposed to be backed up "very, very slowly." (See B, p 50).

The fuel truck had been parked under the wing of a NWA 757 aircraft, had finished refueling that aircraft and was backing up with Plaintiff guiding the truck back as the spotter. (See B, p 50). Plaintiff was aware that in this common work site there are several vehicles and a lot of activity going on in, servicing the aircraft. These other vehicles included APU carts and baggage tugs along with a belt loader to load bags into the aircraft along with possibly a Hobbs truck used for the sanitation of the aircraft. (See B, pp 51-52).

Plaintiff was aware that there is a zone around the aircraft marked with a painted line and "that line is basically the extended area of the aircraft." (See B, p 52). Plaintiff was aware that in the extended line of the aircraft area you had to be very careful and that is why fuel trucks back up slowly and have a spotter or guideman. (See B, p 52).

The truck driver, Mia Whitlow, was a new hire with Signature and had just completed her certification and received her airport

3

badge on that day. (See B, p 44). Plaintiff and Whitlow's shift on
that day was from 2:00 p.m. to 10:00 p.m.; however, Whitlow did not
begin to work with Plaintiff until after the 6:00 p.m. flight bank.
Whitlow's job was to drive and fuel and Plaintiff  was to spot.
Plaintiff states they had just finished fueling the 757 aircraft
from the 8:00 p.m. flight bank. (See B, Dep, p 48).

    At the time that they were under the 757 wing, a belt loader -
a vehicle used to load luggage onto this same aircraft - was to
their left.   There were other carts and vehicles all around the
aircraft along with tugs in front of the fuel truck. (See B, pp 56-
60).  After they had finished fueling, Plaintiff is four to six
feet behind the fuel truck with Whitlow driving and Plaintiff was
directing Whitlow back.  Plaintiff's job was to make sure there was
no traffic to the left or right and that it was clear and safe to
back up. (See B, pp 53, 66).

    Whitlow began to slowly back up the truck.  The truck goes
back six to eight feet and Plaintiff is taking one step back,
looking to his left and right, and alleges he then saw a tug coming
out of the corner of his eye. (See B, p 67). Plaintiff states that
he then scampered out of the way. (See B, p 68). **When he saw the
tug he ran towards the truck but did not tell the truck to stop.**
(See B, p 72). The tug did not hit Plaintiff. (See B, p 70). The
fuel truck does hit him and causes the wound on the front of his
knee. (See B, p 71).  However, Plaintiff does claim the first cart
that the tug is pulling pushes him into the rear of the fuel truck.
(See B, p 70).

4

As spotter, Plaintiff agrees that it was his job to keep the fuel truck from moving if there was any equipment anywhere in the fuel truck's line of travel. (<u>See</u> B, p 92). It was also his job to keep an eye out for anything that comes within the line of travel of the aircraft, including tugs, belt loaders and any other vehicles. (<u>See</u> B, p 92).

Plaintiff states he does not know how long the tug was there. (<u>See</u> B, p 92). He does not know where though tug was coming from, does not know how many carts the tug was pulling, and cannot describe the tug driver besides stating that the driver was a white male. (<u>See</u> B, pp 73-74).

Further, he does not know what was the job of the tug driver or what the tug driver did with the aircraft. He did not watch the tug driver do anything with the aircraft. (<u>See</u> B, p 78). He never spoke with the person who was driving the tug. (<u>See</u> B, p 79). He never saw the tug driver get out of the tug. (<u>See</u> B, p 80).

Plaintiff states that the purpose of his role as a spotter was to give directions to the driver of the fuel truck and to make sure that there was clearance in the traffic around the aircraft. (<u>See</u> B, p 35). Plaintiff also stated that the rules for a spotter were that: (1) before you direct a vehicle to move to make sure that no vehicles are behind you; (2) that at all times a spotter has to be where the fuel truck driver can see the spotter; and (3) if the driver of the fueler cannot see the spotter he is to stop. (<u>See</u> B, p 37).

5

Plaintiff stated at deposition that at the time of the alleged occurrence, the sun had gone down but it was not yet dark. (See B, p 86). Plaintiff also stated that at the time of the accident when he was acting as a spotter, **he did not use or have any florescent wands, lighted wands or flashlights** and did not have any reflective material on his uniform. (See B, p 38).

Signature had several safety procedures in place at the time that this incident allegedly occurred. (See C, some of the safety procedures of Signature). Safety Procedure No. 17 provides in part that:

> "No ground service equipment will be positioned within 10 feet of an aircraft without a guideman [spotter] to control the progress and communicate the clearances to the ramp vehicle operator [fuel truck driver]." (See C, Signature Safety Procedures).

Signature Safety Procedure No. 23 provides in part:

> "The Signature Support guideman [spotter] shall be positioned in such a fashion as to keep permanent visual contact with the aircraft/equipment operator throughout the entirety of the maneuver. If visual contact between the guideman [spotter] and the aircraft/equipment operator is lost or clearance is questionable, the maneuver must be stopped immediately until visual contact is re-established.

> * * *

> All Signature Flight Support guideman [spotter] shall use the day florescent wands for all aircraft operations during daylight hours.

> All Signature Flight Support guideman [spotter] shall use the lighted night wands for all operations conducted during nighttime

6

operations." (See C, Signature Flight Safety
Procedure No. 23).

Signature Safety Procure No. 36 provides in part that"

"Placement of safety cones off the tail
section of a parked aircraft is recommended
for daytime operations and is mandatory for
nighttime operations. (See C, Signature Flight
Safety Procedure No. 36).

Based on Plaintiff's testimony, several of these safety
procedures were not followed and particularly Plaintiff has
admitted that he did not have any reflective clothing, did not use
flashlights or florescent hand wands or lighted night wands when he
was acting as the spotter or guideman backing up Whitlow and the
fuel truck. (See B, p 38). There is also no evidence that he used
the safety cones off the tail section of the parked aircraft.
Recall that the incident occurred after 8:00 p.m. on a September
night and that Plaintiff has stated at deposition that the sun was
already down although it was not yet dark. Arguably, this was
nighttime operations.

Defendant NWA, in its initial Interrogatories to Plaintiff,
requested Plaintiff to provide information regarding any expert
witnesses, including their proposed opinions/testimony. Pursuant
to this Court's revised Scheduling Order, discovery in this case
ended on March 15, 2002. As of this writing, Plaintiff has never
supplemented his response to those Interrogatories about experts
which asked for the facts the experts rely on and any opinions.
Plaintiff has responded only that:

"At this early stage of discovery, expert
witnesses have not been determined. A witness
list will be provided in accordance with the

7

> Court's Scheduling Order and information
> regarding experts will be provided **if and when
> such information becomes available.**" (See D,
> Plaintiff's Answers to Interrogatories).
> (emphasis added).

Based on this answer, Defendant NWA presumes that no
information has become available with regard to experts. Further,
based on this answer, Defendant NWA contends that Plaintiff will
not be able to meet his burden of proof with regard to proving
liability of NWA.

Plaintiff has taken the deposition of Michael Rachfal.
Rachfal is a NWA employee who was hired in January, 1987 as an
equipment service employee. (See Rachfal Dep, p 9). Rachfal was
subsequently promoted to lead equipment service employee which
Rachfal described as basically a supervisor position. (Rachfal Dep,
p 9). With regard to training of any NWA tug drivers, Rachfal
testified that all new hires receive two weeks of training and then
after that receive on-the-job training to make sure "everybody is
acquainted with the ground equipment... especially tugs,
beltloaders,..." (Rachfal Dep, p 13). Rachfal was clear that every
employee of NWA that works on the ramp attends training before they
are allowed to work on that ramp. (Rachfal Dep, p 14).

Rachfal also addressed the issue of whether the tug driver
could have been speeding. Rachfal was clear on all NWA tugs there
are governors. That is, a mechanical device that automatically
controls the speed of an engine, that "keeps the tug at a minimal
speed to avoid excess speeds." (Rachfal Dep, p 20). Rachfal

8

understood that NWA tugs, at most, can go 15 miles per hour, given the governors that are applied to all of the NWA tugs.

Rachfal was not asked several pertinent things about his position at his deposition.  In his Affidavit (See F), Rachfal asserts that numerous vehicles are expected to be within the 25 foot circle of safety around an aircraft when the aircraft is on the ground being serviced. (See F, paragraph 4).  These could include beltloaders, luggage tractor with attached baggage carts, hydrant fuel vehicles, catering vehicles, conditioned air unit, air starter units, lavatory service vehicles and water service vehicles.  Rachfal also states in his Affidavit that he is aware of the deposition testimony of Phillips and has read the statement of the fuel truck driver Whitlow.  From the deposition testimony, Rachfal concludes that Phillips was not wearing reflective clothing or using lighted florescent wands as required by the Signature manual requiring guide workers to wear reflective clothing and to use lighted wands so that they are visible to the fuel truck driver. (See F, paragraphs 7, 8 & 9).  Rachfal also states that based on the deposition testimony of Plaintiff and the statement of Whitlow, the fuel truck driver did not immediately stop as required by the Signature manual. (See F, paragraph 9).  Rachfal also offers through his experience that the presence of a tug on the ramp in proximity to the aircraft was a normal, expected and anticipated event.  It is the presence of these vehicles that is the purpose behind Signature fuel truck drivers having a requirement of a guidewalker or spotter to direct their movements near the ramp.

9

(See Rachfal Affidavit, paragraph 10).

In ruling on the first filed Motion for Summary Judgment, this Court held:

> "I will deny the Defendant's motion on this issue [common law negligence]: **Principally, because it appears that this is a case of recent origin** having been initiated in August of last year, there's evidence that the Plaintiff is attempting or has attempted to establish the identity of the driver who, in his judgment, was responsible for the injuries of which he complains. There is also evidence that the Plaintiff is seeking and will attempt to depose the eye witness or eye witnesses who can shed some light on the subject. **It very well may be that at the end of the discovery period the Plaintiff will be able to establish at least on a prima facie basis, that the driver of the vehicle was a Northwest employee** and that this driver was negligent in the operation. **That of course, remains to be seen.**
>
> But for now I will deny in part and grant in part the Defendant's [motion] for summary judgment. I will grant the judgment to the Defendant as relates to the claims of, against Northwest in violation of the Michigan Compiled Laws for the reasons as noted on the record. I will deny the Defendant's request on the common law negligence claim." (See F, p 14). (emphasis added).

Based on the discovery to date, Defendant contends that Plaintiff cannot prove his claim of negligence against NWA. There is no further evidence that the alleged tug driver was a NWA employee. Further, Defendant NWA also contends that since this was a common work site area and since Plaintiff's employer was a sub-contractor or independent contractor hired by NWA, that NWA is not liable for the safe work place of Plaintiff, but that his own employer was.

10

Defendant also contends that Plaintiff's role as spotter and his own inability to perform that role was the cause in fact of any accident and that regardless of whether Plaintiff could prove any breach of duty by NWA, same could not be a cause-in-fact of the alleged incident, thereby entitling NWA to summary judgment.

**LEGAL ARGUMENT**

## Standard of Review

Pursuant to **Rule 56(c)** of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See also, **Anderson v Liberty Lobby, Inc.**, 477 U.S. 242, 246 (1986). The court is to construe the evidence and all inferences to be drawn from it in the light most favorable to the non-moving party. **Id.** at 255.

The initial burden is on the party seeking summary judgment to show that there are no genuine issues of material fact for trial. **Celotex Corp.** v **Catrett**, 477 U.S. 317, 323 (1989); **Street** v **J.C. Bradford & Co.**, 886 F. 2d 1472, 1479 (6th Cir., 1989). Once the moving party has met its burden, the non-moving party may not rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting his claims and establishing the existence of a genuine issue of material fact. **Celotex**, **Supra** at 324. Conclusory opinions, not based upon personal knowledge, but based solely on plaintiff's subjective

11

judgments, do not rise to a level of contradictory proof required to rebut a defendant's sworn affidavits and other evidence submitted under Rule 56 of the Federal Rules of Civil Procedure. <u>Mayberry</u> v <u>Endocrinology-Diabetes Associates</u>, 926 F. Supp. 1315, 1322 (M.D. Tenn., 1996).

    I   <u>There is no genuine issue of material fact;</u>
            <u>Plaintiff has no proof but only speculation of</u>
            <u>breach of duty by NWA.</u>

In Michigan, in order to establish a prima facia case of negligence, Plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and, (4) damages. <u>Schultz</u> v. <u>Consumers Power Co.</u>, 443 Mich. 445, 449, 506 N.W. 2d 175 (1993).

Defendant NWA first contends that on these facts where the alleged incident happens in a common work area, that Defendant owed no duty to employees of its independent sub-contractor. Defendant would rely on its argument III.

However, even if a duty was owed, Plaintiff has no evidence of breach of that duty. That is, Plaintiff has only speculation that the driver of the tug did anything wrong. Plaintiff has no witness as to what the driver of the tug did, besides himself. Plaintiff at deposition states that he just barely sees the tug out of the corner of his eye, and then attempts to scamper out of the way. In doing so, Plaintiff fails to follow the safety rules of procedure of Signature with regard to spotting or guiding a vehicle backwards. That is, Plaintiff does not tell the fuel truck to stop. According to Plaintiff, he runs towards the fuel truck and

12

the injury to the front of his knee is from his contact with the
fuel truck.

Plaintiff does not know how fast the tug was going. Plaintiff
has no evidence the tug was not operating exactly as it is supposed
to operate in that ramp area at the airport. Plaintiff only has
his own speculation with regard to any breach of duty by the tug
driver or any alleged NWA employee that may have been driving the
tug that may have been involved in this incident. Recall, it is
Plaintiff who is walking backwards without proper safety equipment,
in this busy common work-site.

As this circuit has recognized in the <u>Street</u> v. <u>J.C. Bradford
Supra</u>, a movant in a motion for summary judgment under **Rule 56** may

> "challenge the opposing party to 'put up or
> shut up' on a critical issue. After being
> afforded sufficient time for discovery, as
> required by **Fed. R. Civ. P. 56(f)**, if the
> respondent did not 'put up' summary judgment
> was proper. The Court[1] concluded: 'Rule 56(e)
> permits a proper summary judgment motion to be
> opposed by any of the kinds of evidentiary
> materials listed in Rule 56(c), except the
> mere pleadings themselves, and it is from this
> list that one would normally expect the non-
> moving party to make the showing to which we
> have referred. <u>Id.</u> at 2554.
>
> Read together, <u>Liberty Lobby</u> and <u>Celotex</u> stand
> for the proposition that a party may move for
> summary judgment asserting that the opposing
> party will not be able to produce sufficient
> evidence at trial to withstand a directed
> verdict motion. If, after a sufficient time
> [sic, for] discovery, the opposing party is
> unable to demonstrate that he or she can do so

---

[1]    See <u>Celotex Corp.</u> v. <u>Catrett</u>, 477 U.S. 317, 106 S. Ct.
2548, 2553, 91 L. Ed. 2d 265 (1986).

> under the **Liberty Lobby** criteria, summary judgment is appropriate." **Street**, 886 F. 2d at 1478.

Plaintiff has only speculation that the alleged tug driver was speeding or was negligent.  The record evidence is that the NWA tugs have governors that restrict their speed.  The evidence also is that it was Plaintiff's job to look behind and all around to ensure that the traffic area was clear.  This is a highly congested common workspace area.  Plaintiff evidently failed to properly look out if the accident did occur as described by Plaintiff at deposition.  Plaintiff failed to wear the reflective clothing.  Plaintiff failed to use the florescent wands or flashlights, Plaintiff failed to use cones.

On the facts gleaned from discovery, Defendant contends that Plaintiff will not be able to make a prima facie showing of negligence and specifically Plaintiff has no evidence that Defendant breached any duty owed; therefore summary judgment is appropriate.

Further, Plaintiff will have no expert testimony to support any of his conclusions of negligence given Plaintiff's responses to interrogatories that, with regard to experts, information "will be provided if and when such information becomes available." (See C).  Given this answer and the failure to supplement, Defendant presumes that Plaintiff has no expert testimony that has become available to support his claim.  For all those reasons and given the decision in **Street** and the two Supreme Court cases cited in the Standard of

14

Review, Defendant NWA contends that it is entitled to summary judgment.

**II.    Further, even if Plaintiff could prove a breach of duty by NWA, Plaintiff's own actions were the cause in fact of the injury and NWA is not liable.**

Going back to the elements necessary for Plaintiff to prove a claim of negligence against Defendant, even if Plaintiff proves duty, breach of duty, Plaintiff has no evidence of proximate cause or cause-in-fact. The Michigan Supreme Court in **Skinner v. Square D. Co.**, 445 Mich. 153, 516 N.W. 2d 475 (1994), held that causation theories that are mere possibilities or, at most, equally as probable as other theories, do not justify denying a motion for summary judgment. If a plaintiff's proofs do not create a reasonable inference or logical sequence of cause and effect, summary judgment is appropriate. **Singerman v. Municipal Service Bureau, Inc.**, 455 Mich. 135, 145, Note 6, 565 N.W. 2d 383 (1997). In **Singerman**, plaintiff failed to wear the safety equipment required by the defendant. The defendant ran a municipal hockey rink or skating rink. Plaintiff then contended that defendant was liable because defendant failed to properly light the skating rink and had the skating rink been properly lit, plaintiff would have been able to avoid an on-coming hockey puck that caused him injury. Alternatively, Plaintiff argued that Defendant was liable for letting Plaintiff on the ice without the safety equipment.

That is, plaintiff asserted that but for the defective lighting he would not have been injured. The **Singerman** court rejected this theory of liability. Likewise, this Court should

15

reject Plaintiff Phillips' theory of liability. Plaintiff Phillips contends, that regardless of the fact that he did not wear proper safety equipment, regardless of the fact that it was his role or job as the guideman or spotter to specifically be looking out for other vehicles such as the alleged tug that was allegedly driven by a NWA employee, that but for the alleged NWA tug driving into the ramp area to service the same aircraft, Plaintiff would not have been injured.

On the first instance, as Defendant contended in Issue (I), there is no evidence that that tug driver was even negligent. The evidence is that the sun had gone down, Plaintiff failed to use the lighted wands or other reflective material and Plaintiff failed to use the cones to establish an area where he was working and backing up the truck. There is also evidence that Plaintiff failed to tell the fuel truck to stop. There is also evidence that it is the fuel truck that hits Plaintiff on the knee. There is no evidence that the presence of the tug, when it is driven into the area to do its assigned work, was a proximate cause or cause-in-fact of any injury to Plaintiff. Based on both the <u>Skinner</u> and <u>Singerman</u> cases, Plaintiff will not be able to prove cause-in-fact. Defendant contends that there is no genuine issue of material fact and that Defendant is entitled to summary judgment.

    III   <u>There is no genuine issue of material fact that NWA did not control the work site nor was this an inherently dangerous activity and therefore the general rule in Michigan prevails and Plaintiff's employer is the one responsible for Plaintiff's safe work place, and there is no liability for NWA.</u>

16

As a general rule in Michigan, an entity that hires a sub-contractor is not liable to an employee of that independent contractor for negligence that causes an unsafe work place. In such situations, the actual employer of a worker is the one immediately responsible for job safety and for maintaining a safe work place.

> "The two main exceptions to this general rule provide for liability if: (1) the property owner retains control over the work done and the contractor's activities or (2) the work is inherently dangerous - the work can reasonably be foreseen as dangerous to third parties. Bosac v Hutchinson, 422 Mich. 712, 724, 375 N.W.2d 333 (1985); Wolfe, Supra[2]." Samodai v Chrysler Corporation, 178 Mich. App. 252, 255, 443 N.W.2d 391 (1989).

In Samodai, plaintiff Samodai was standing on a wooden pallet that was placed on top of fork lift prongs and was elevated in order to change some temporary light bulbs suspended twenty to twenty-five above the floor. As the fork lift prongs were being lowered, the fork lift malfunctioned dislodging Samodai and causing him to fall. Samodai worked for a contracting firm doing demolition or renovation work at Chrysler. Plaintiffs in Samodai, after they were dismissed, argued out on appeal that the activity was inherently dangerous. This argument was rejected since, in order for the inherently dangerous activity exception to apply,

> "the risk or danger must be recognizable in advance of the accident, more specifically, at the time of the inception of the contract. See Bosac, Supra, P 728 ('[thus], liability should not be imposed when a new risk is created in

---

[2]   Wolfe v Detroit Edison Co., 156 Mich. App. 626, 627, 402 N.W.2d 16 (1986).

17

> the performance of the work which is not
> reasonably contemplated at the time of the
> contract'). In this case, neither changing
> light bulbs nor operating a fork lift are to
> be reasonably anticipated as presenting
> peculiar risks or special dangers. Instead,
> the accident appears to have resulted from a
> routine activity carrying a risk collateral to
> the nature of the anticipated job". <u>Samodai</u>,
> 178 Mich. App. at 255.

Likewise, Plaintiff acting as a spotter was carrying on a routine activity that carries a risk collateral to the nature of the anticipated job, backing up the truck. Plaintiff knew he was in a high-traffic area and walked backwards into the traffic area without properly looking where he was going.

There is also no genuine issue of material fact that NWA did not retain substantial control over the work performed by Plaintiff. The undisputed facts will be that Plaintiff was an employee of an independent contractor and that independent contractor used its own vehicles and its own employees to carry out its performance of that contract - refueling NWA aircraft.

In <u>Candelaria</u> v <u>B.C. General Contractors, Inc. and Horizon Cablevision, Inc.</u>, 236 Mich. App. 67, 600 N.W.2d 348 (1999), defendant argued that it did not maintain and exercise sufficient control over another independent contractor's work to be held liable for Candelaria's injury. Candelaria was injured when attempting to string cable.

On the issue of retained control, the <u>Candelaria</u> court held that:

> "At a minimum, for an owner or general
> contractor to be held directly liable in
> negligence, its retention of control must have

18

had some **actual effect** on the manner or
environment in which the work was performed."
<u>Candeleria</u>, 236 Mich. App. at 76. (Emphasis
added)

On this point, the <u>Candeleria</u> court concluded that viewing the
evidence in light most favorable to the plaintiff, such evidence
"did not permit a finding that the control retained by BC had any
effect on the manner or environment in which the work was
performed." <u>Candelaria</u>, 236 Mich. App. at 77.

In this case, discovery is over. Discovery ended on March 15,
2002.  Plaintiff has no evidence that NWA retains control over the
aspects of Signature's re-fueling of aircraft.

With regard to any allegation of respondeat superior,
Plaintiff, at deposition, could not say who the driver of the tug
was or what the tug driver's role was for NWA if, in fact, he was
employed by NWA.  At deposition, Plaintiff simply could not
identify the tug driver except as a white male.

Nothing about the job of acting as a spotter was inherently
dangerous and there is no evidence and no genuine issue of material
fact to support that it was.  There is nothing inherently dangerous
about the spotter's job when work rules and safety rules are
followed.  Further, there is no genuine issue of material fact to
support any claim that NWA had the requisite control over its
independent contractor to establish any liability for providing a
safe work place.

Finally, Michigan law specifically puts the duty on the
employer, Signature Flight Service, Inc. **M.C.L. §408.1011** provides
in pertinent part that the duties of an employer include

19

"(a) Furnish to each employee, employment in a
place of employment which is free from
recognized hazards that are causing, or are
likely to cause, death or serious physical
harm to the employee..."

CONCLUSION

**WHEREFORE**, Defendant NWA respectfully requests that this Court
grant this Motion.  Plaintiff has no proof of breach of duty by NWA
or the alleged tug driver.  Further, Plaintiff's own actions were
the cause in fact of the injury and were superseding and
intervening regardless of any duty or breach that may be proved
against NWA.

Further, in this common work site occurrence, NWA, as the
entity that hired Signature, the sub-contractor, is not responsible
for providing a safe workplace for Plaintiff.  For all these
reasons, Defendant NWA requests this Court grant this Motion.

Respectfully submitted,

NAGI, BAXTER & SEYMOUR, P.C.

By: _Daniel J. Seymour_

DAVID R. BAXTER (P38908)
DANIEL J. SEYMOUR (P38908)
Attorney for Defendant NWA
155 W. Congress, Suite 300
Detroit, MI 48226
(313) 964-2040

Dated: March _22_, 2002

20

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK R. PHILLIPS,

        Plaintiff,

vs.

NORTHWEST AIRLINES CORPORATION,

        Defendant.

Case No. 00-74168
Hon. Julian Able Cook, Jr.

| | |
|---|---|
| DAVID LAWRENCE RAVID (P33384)<br>Ravid & Associates<br>24681 Northwestern Hwy.<br>Suite 414<br>Southfield, MI 48075<br>(248) 948-9696 | DAVID R. BAXTER (P31121)<br>Nagi, Baxter & Seymour, P.C.<br>155 W. Congress<br>Suite 300<br>Detroit, MI 48226<br>(313) 964-2040 |

## PROOF OF SERVICE

AUDRA M. LAUBERT, states that she is employed by the law firm of Nagi, Baxter & Seymour, P.C. and that on this 22nd day of March, 2002, she served a copy of Defendant Northwest Airlines, Inc.'s Defendant Northwest Airline's Motion in Limine to Preclude Expert Testimony; Notice of Hearing re: Motion in Limine; Defendant Northwest Airline's for Summary Judgment Pursuant to F.R.C.P. 56; Notice of Hearing re: Motion for Summary Judgment; and this Proof of Service in an envelope addressed to:

DAVID LAWRENCE RAVID, ESQ.
24681 Northwestern Hwy., #414
Southfield, MI 48075
(248) 948-5055

and by placing same in an envelope with postage fully prepaid and placing same in a U.S. Mailbox.

               Audra M. Laubert

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK R. PHILLIPS,

          Plaintiff,

vs.

NORTHWEST AIRLINES CORPORATION,

          Defendant.

Case No. Julian Abele Cook
Hon. 00-74168

---

DAVID LAWRENCE RAVID (P33384)
Ravid & Associates
Attorney for Plaintiff
24681 Northwestern Hwy.
Suite 414
Southfield, MI 48075
(248) 948-9696

DAVID R. BAXTER (P31121)
Nagi, Baxter & Seymour, P.C.
Attorney for Defendant
155 W. Congress
Suite 300
Detroit, MI 48226
(313) 964-2040

---

## NOTICE OF HEARING

    **PLEASE TAKE NOTICE** that Defendant Northwest Airlines, Inc.'s Motion for Summary Judgment will be heard before the Honorable Julian Abele Cook on a date and time to be set by the Court.

                Respectfully submitted,

                NAGI, BAXTER & SEYMOUR, P.C.

                By: _David J. Seymour_
                David R. Baxter (P31121)
                Daniel J. Seymour (P38908)
                Attorneys for Defendant NWA
                155 W. Congress, Suite 300
                Detroit, MI 48226
                (313) 964-2040

Date: March __22__, 2002

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

# SEE CASE FILE FOR ADDITIONAL DOCUMENTS OR PAGES THAT WERE NOT SCANNED